SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jimmy Oram, | No.  CV-12-02450-PHX-FJM (BSB) |
| Plaintiff, | |
| vs. | **ORDER** |
| Mike Linderman, et al., | |
| Defendants. | |

Plaintiff Jimmy Oram, who is a prisoner in the custody of the Arizona Department of Corrections (ADC), brought this civil rights case pursuant to 42 U.S.C. § 1983 against Defendants Mike Linderman, Charles Manning, Wexford Health Services (Wexford), Dr. Thomas Bell, and Cameron Lewis, Facility Health Administrator (FHA).  (Doc. 41, Second Amend. Compl. (SAC).)   Plaintiff moves for summary judgment on the remaining claims—Counts I through III.  (Doc. 72.)  Defendants Wexford, Bell, and Lewis, who are Defendants in Count III only, cross-move for summary judgment.[1]  (Doc. 80.)  Defendants Linderman and Manning, who are Defendants in Counts I and II only, file a separate cross-motion for summary judgment.[2]  (Doc. 99.)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), regarding the requirements of a response.  (Doc. 82.)

[2] Counts I and II raise religious exercise claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Court will address those Counts by separate Order.

The Court will deny Plaintiff's Motion on Count III, grant Defendants' Motion on Count III, and dismiss the claim and Defendants Wexford, Bell, and Lewis.

**I.    Background**

In Count III, Plaintiff claims his Eighth Amendment rights were violated when Defendants Wexford and Bell arbitrarily discontinued his diabetes medication and Lewis failed to correct the problem. Plaintiff claims that as a result of being denied the medication, he experienced vomiting, dizziness, fatigue, and general malaise.

In support of his Motion, Plaintiff submits his Statement of Facts (Doc. 73 (PSOF ¶¶ 33-47)), his declaration (Doc. 74, Pl. Decl. ¶¶ 32-46), and various exhibits (Doc. 75, Exs. 12-18 (in part)). Defendants submit their Statement of Facts (Doc. 81 (DSOF)) and exhibits (*id.*). Plaintiff submits his reply and response (Doc. 86) and his Statement of Facts in Response to Defendants' Motion (Doc. 87 (PSOFR)) with additional exhibits. Plaintiff also files a Motion for Leave to Authenticate Plaintiff's Exs. B-E, which are attached to PSOFR; Defendants oppose. (Docs. 94, 102.)

**II.   Summary Judgment Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a material factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any. *See* Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine

whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

**III.    Count III—Wexford Health Services, Dr. Bell, and Mr. Lewis**

      **A.    Background Facts**

Wexford is the private company that during the relevant time period contracted with ADC to provide health care services to ADC inmates. (PSOF ¶ 33.) Dr. Bell and Mr. Lewis were employees of Wexford. (PSOF ¶¶ 34, 35; Doc. 81, Ex. 3, Bell Decl. ¶ 2, Ex. 9, Lewis Decl. ¶¶ 1-2.)

Plaintiff, who is housed at Arizona State Prison Complex (ASPC)-Lewis, asserts that he is diabetic and takes Metformin. He claims that when he does not have his medication, his blood-sugar levels can rise dangerously. (PSOF ¶ 36.) Dr. Bell was Plaintiff's treating physician and on June 4, 2012, ordered Plaintiff Metformin through December 2012. On November 17, 2012, Plaintiff stopped receiving the medication and began to experience mild symptoms within days. On November 25, he submitted a Health Needs Request (HNR) for medication. (PSOF ¶ 38.) The pharmacy advised Plaintiff on November 27 that the medication was discontinued. (PSOF ¶ 39; DSOF ¶ 21.)

On December 4, 2012, in response to an inmate letter about the lack of medication, Plaintiff was advised by CO III Neu that he sent an email "to the FHA." (PSOF ¶ 40.) When Plaintiff did not receive a further response, he filed a grievance. (*Id.* ¶ 41.)

Defendants concede that the medication was discontinued. (DSOF ¶ 23.) But they assert that in August of 2012, Dr. Bell left ASPC-Lewis and worked exclusively at ASPC-Florence and ASPC-Eyman and did not return to ASPC-Lewis until January 15,

2013. From August 2012 until January 15, 2013, Dr. Bell did not treat inmates at ASPC-Lewis. (*Id.*) After Dr. Bell left ASPC-Lewis, Dr. Erin Corridon, a temporary doctor who is not a Defendant, provided treatment to inmates at ASPC-Lewis. (*Id.* ¶ 17.) The pharmacy records show that Dr. Corridon renewed Plaintiff's Metformin prescription on November 9, 2012 for six months but the quantity prescribed was zero. (*Id.* ¶¶ 22-23, Ex. 5.)

On January 30, 2013, after his return to ASPC-Lewis, Bell examined Plaintiff, ordered tests, and prescribed two Metformin prescriptions. (*Id.* ¶¶ 38-40.) According to Defendants, one Metformin prescription was for 30 days, which Plaintiff received that day; the other prescription was for 17 days and was filled on February 19. (*Id.* ¶¶ 43-46.) Plaintiff disputes that he received his prescription on January 30. Instead, he asserts that he did not receive his medication until February 20. (PSOFR ¶ 38.)

Lewis first began working as Complex Manager on December 3, 2012 and his email was not set up until several days later. (DSOF ¶¶ 28-31, Ex. 9, Lewis Decl. ¶¶ 1, 2.) He avers that he did not receive Plaintiff's medical grievance until January 30, 2013, and scheduled an appointment for Plaintiff to see Dr. Bell that same day (DSOF ¶¶ 35-36.)

### B. Legal Standards

To prevail on a claim under the Eighth Amendment for prison medical care, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) that the defendant's response was deliberately indifferent. *Id*. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate

indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096.

But mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). Inadequate treatment due to malpractice or even gross negligence does not constitute an Eighth Amendment violation. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Moreover, differences in judgment between an inmate and prison medical personnel regarding an appropriate medical diagnosis or treatment are not enough to establish a deliberate indifference claim. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

**C.    Discussion**

The Court will deny Plaintiff's motion and grant Defendants' motion for summary judgment.

**1.    Preliminary Issue—Plaintiff's Motion to Authenticate and Admissibility**

In his SAC, Plaintiff asserts policies or practices by Wexford and Bell of (1) arbitrarily discontinuing life-saving medications to save money and (2) failing to train staff to appropriately address inmates' HNRs. (Doc. 41 ¶¶ 5, 13.)

Plaintiff submits four exhibits with the PSOFR that he moves to have authenticated. (Doc. 94; ref. Doc 87, Ex. B, "Written Cure Notification"; Ex. C, Wexford Organizational Chart; Ex. D, ADC Press Release; Ex. E, Inmate Letter Response.) Defendants object on grounds of admissibility and authentication. (Docs. 91, 102.)

Plaintiff's Exhibit B is a letter, dated September 21, 2012, from the ADC to Wexford, designated a Written Cure Notification. (PSOFR ¶¶ 5, 16; Ex. B.) The document is self-authenticating. *See* Fed. R. Evid. 902(1). It contains the Arizona State Seal as well as the ADC Seal. Moreover, Defendants do not claim that the letter is not what it purports to be. (Doc. 102.) Plaintiff argues that the letter is admissible under Rule 803(6) and (8). (PSOFR ¶ 5.) Relying on this Cure-Notification letter, Plaintiff

further asserts that "according to ADC officials, 'Wexford's Regional and Corporate personnel,' were aware that within just the first 6 weeks of the start of their contract more than '8350' prisoner's medications were discontinued and there weren't enough medical personnel to meet their medical needs." (Doc. 87 at 2.) In fact, this letter states that during August 2012, ADC conducted random reviews of prescriptions and learned that "a significant number of inmates *may* not have been receiving their medications as prescribed due to expired prescriptions and inappropriate renewals or refills. Approximately 8,358 prescriptions *required review* and *potential renewal* to ensure inmates receive their required medications." (*Id*., Ex. B at 2) (Emphasis added.) The letter also alleges "inadequate staffing levels in multiple program areas at multiple locations."[3] (*Id*. at 5.) Defendants object to the admissibility of the letter. (Doc. 91 at 3.)

The Court finds that although the letter is admissible to show that Wexford was on notice of alleged problems with medications, *see e.g. U.S. v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991), the allegations in the letter regarding the existence of those problems are not admissible against Wexford or any Wexford employee. That is, the allegations themselves are not evidence of a problem with medications. Those allegations are hearsay made in the context of a contract dispute between ADC and Wexford, and they are not admissible as admissions against Wexford under Federal Rule of Evidence 801(d)(2).

In addition, Plaintiff fails to point to evidence in an admissible form to establish the existence of widespread problems with medications. *See* Fed. R. Civ. P. 56(c)(2). Only admissible evidence may be considered in ruling on a summary judgment motion. *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). While material produced at the summary judgment stage need not be in the form of admissible evidence, in order to create a genuine dispute of fact, a party must demonstrate at summary judgment that he can present evidence in support of the fact that would be admissible at trial. "At the

---

[3] Plaintiff does not raise an issue of understaffing in his SAC, so the Court will not consider it. *See Pickern v. Pier 1 Imports, Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (a party may not raise new claims in response to a summary judgment motion).

1  summary judgment stage, we do not focus on the admissibility of the evidence's form.
2  We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032,
3  1036-37 (9th Cir. 2003) (finding on summary judgment that that even if a diary was not
4  admissible, it was sufficient if the contents of the diary were admissible where the
5  contents were mere recitations of events within the plaintiff's personal knowledge to
6  which she could testify at trial); *see also Block v. City of Los Angeles*, 253 F.3d 410, 419
7  (9th Cir. 2001) (although a party need not produce at summary judgment evidence in a
8  form that would be admissible at trial, it was an abuse of discretion to consider
9  information in an affidavit that failed to set forth facts that would be admissible in
10 evidence because it was not made on personal knowledge).

11 As the commentary to Rule 56(c)(2) states, "[t]he burden is on the proponent to
12 show that the material is admissible as presented or to explain the admissible form that is
13 anticipated." *See* Fed. R. Civ. P. 56(c)(2), Advisory comm. notes to 2010 Amendments.
14 Plaintiff points to no evidence other than the Cure-Notification letter to establish the
15 alleged widespread policy or practice of failing to provide medications. Plaintiff does not
16 submit the underlying data referred to in the Cure-Notification letter that purports to form
17 the basis of the allegations. He does not claim to have the data, and he does not identify
18 other evidence in admissible form to prove a policy or practice of failing to provide
19 medications. Moreover, discovery is closed. (Doc. 20, 67.) Thus, Plaintiff does not
20 explain how he will present evidence on this point in a form that would be admissible.
21 *See* Fed. R. Civ. P. 56(c)(2). Without admissible evidence, Plaintiff fails to create a
22 genuine issue of disputed fact regarding such a policy.

23 The January 2013 News Release, which Plaintiff seeks to have authenticated,
24 merely states that ADC and Wexford agreed to terminate the contract. (Doc. 87, Ex. D.)
25 It contains no probative evidence regarding any issues in the case, and therefore the
26 motion for authentication is denied. The Court will address the authentication of the
27 remainder of the exhibits in question as they are relevant to the issues.

28

**2.     Defendants**

   **a.     Dr. Bell**

The undisputed facts show that Dr. Bell prescribed Plaintiff's Metformin on June 4, 2012 through December 2012. It is also undisputed that Bell was not at the ASPC-Lewis facility from August 2012 until January 15, 2013, and he did not treat ASPC-Lewis inmates during his absence. Plaintiff argues that it is irrelevant that Bell did not treat inmates because Bell was Wexford's Medical Director, and under ADC policy, he was "accountable to ensure all inmates are provided access to health care." (PSOFR ¶ 16.) But there is no *respondeat superior* liability under § 1983, and therefore a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691-92 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, Bell's position as Medical Director is insufficient to create a triable issue of fact as to his liability. Plaintiff's motion to authenticate the organizational chart showing Bell as medical director at PSOFR, Ex. C is denied as moot.

Nevertheless, as a supervisor, Bell could be deliberately indifferent if he "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). The requisite causal connection can be established in a number of ways: the plaintiff may show that the supervisor knowingly refused to terminate acts by others that he knew or should have known would inflict a constitutional injury; that he acquiesced in a constitutional deprivation by subordinates; or that he exhibited a reckless or callous indifference to the prisoner's constitutional rights. *Moss v. U.S. Secret Serv.*, 675 F.3d 1213, 1231 (9th Cir. 2012); *Dubner v. City of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001); *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).

Plaintiff suggests that Bell was aware of the "expired medication issue" because on September 21, 2012, ADC provided Wexford the Cure-Notification letter. (PSOFR ¶¶

1  5, 16; Ex. B.)  First, as noted, the allegations in the letter are inadmissible hearsay as to
2  "expired prescriptions and inappropriate renewals or refills."  Second, there is no
3  evidence that Bell ever saw the letter or otherwise knew about the alleged problem; Bell
4  is not listed as a recipient of the letter.  And although Plaintiff alleged in his SAC that it
5  was Bell's policy, he offers no evidence to support the claim.  Instead, Plaintiff admits
6  that Bell prescribed Metformin for Plaintiff.

7  Bell attests that after he returned to ASPC-Lewis, he examined Plaintiff on
8  January 30, ordered tests, and prescribed Metformin that same day.  However, Plaintiff
9  asserts that he did not receive his medication until February 20—20 days later.  (PSOFR
10 ¶ 38.)  He further states that "though Bell filled out the prescription[,] . . . he never
11 processed it or followed up on it."  (*Id*.)

12 But Plaintiff provides no evidence that Bell failed to "process" the prescription; he
13 does not explain what he means by this conclusory allegation and offers no evidence that
14 Bell had a duty to follow-up on the prescription absent a complaint from Plaintiff
15 regarding non-receipt of his medication.  Plaintiff's speculation is not evidence of Bell's
16 deliberate indifference.  *See Taylor*, 880 F.2d at 1045.

17 In sum, there is no evidence that Bell was deliberately indifferent to Plaintiff's
18 medical needs.  Bell actually prescribed Plaintiff Metformin on two occasions and was
19 otherwise absent and not treating Plaintiff during the relevant timeframe.  Summary
20 judgment is granted in favor of Bell.

21 **2.  Lewis**

22 It is undisputed that Lewis is an administrator; he held the title of Complex
23 Manager, formerly known as the FHA.  Plaintiff alleges that under ADC regulations,
24 Lewis had the duty to investigate medical grievances and correct problems in a timely
25 manner.  (PSOF ¶ 35.)  Plaintiff asserts that Lewis knew for almost two months that the
26 medication had been stopped but took no action to remedy the situation.  (PSOFR ¶ 37.)

27 Lewis asserts that he started working at ASPC-Lewis on December 3, 2012, and
28 that his e-mail was not set up until several days later.  (DSOF, Ex. 9, Lewis Decl. ¶¶ 1,

2.)  Plaintiff disputes the date of the e-mail set-up, arguing that CO III Neu stated in his December 1, 2012 response to Plaintiff's inmate letter, that he sent an e-mail "to the FHA" regarding the medical issues.  (PSOFR ¶ 28.)  But even assuming that Neu's statement is admissible to show Neu sent an e-mail to FHA, the statement is ambiguous as to when the e-mail was sent, and provides no evidence as to when or whether Lewis actually received the e-mail.  The Court finds that PSOFR, exhibit E is irrelevant to the question of whether Lewis actually received an e-mail notification.  Plaintiff's motion to authenticate exhibit E is denied as moot.

Plaintiff filed a grievance directed to Neu on December 19, writing "Emergency" at the top.  (DSOF, Ex. 11 (Doc. 81-1 at 40))  It is stamped as received in the Health Unit on December 27.  (*Id.*)  Plaintiff speculates that the grievance was therefore processed and delivered to Lewis as an emergency medical grievance.  (PSOFR ¶ 34.)  But Plaintiff's speculation is not evidence that the grievance was received earlier by the Health Unit and then delivered to Lewis.  Instead, protocol at ASPC-Lewis required that medical emergencies were to be conveyed by the CO III to medical staff, not to administrative staff such as Lewis.

Lewis attests that to the best of his recollection he did not become aware of the grievance until January 30, 2013.  (DSOF, Ex. 9 ¶ 6.)  The grievance is not addressed to Lewis and there is no evidence to contradict Lewis's claim.  Once Lewis received Plaintiff's grievance on January 30, 2013, Lewis acted to ensure that Plaintiff received appropriate medical treatment by scheduling an appointment with Dr. Bell the very same day.  (DSOF 37).

In sum, there is insufficient probative evidence to show that Lewis was deliberately indifferent to Plaintiff's medical needs, in other words that he was aware of Plaintiff's medication issue prior to late January and, knowing of a risk to Plaintiff, failed to take action.  *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) ("If a prison official should have been aware of the risk, but was not, then the official has not violated

1  the Eighth Amendment, no matter how severe the risk."). Summary judgment is granted
2  in favor of Lewis.

### 3. Wexford

It is well established that although municipalities and local governmental units can be sued under § 1983, they cannot be held liable solely because they employed a tortfeasor; that is, they cannot be liable on a theory of *respondeat superior. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The requirements of *Monell* apply to § 1983 suits against private entities acting under color of law. *Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001).

A plaintiff can establish private-entity liability by proving "that a[n] . . . employee committed the alleged constitutional violation pursuant to a formal [entity] policy or longstanding practice or custom which constitutes the standard operating procedure of the . . . entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). Plaintiff must also prove that the policy caused the constitutional violation. *Id.* In his SAC, Plaintiff alleged that Wexford began deliberately discontinuing life-saving medications to save money. (Doc. 40, SAC, Count III, ¶ 5.)

But as noted, Plaintiff provides no admissible evidence of such a policy. In contrast, two Wexford doctors prescribed Plaintiff's Metformin during the relevant time period, and Bell renewed the prescription immediately upon his return to ASPC-Lewis. Moreover, Defendants provide evidence that throughout the relevant timeframe, Plaintiff, continued to receive medications for all of his other conditions, including hypertension, cholesterol, and hypokalemia. (DSOF ¶¶ 49-52.) Providing such medications is inconsistent with the policy alleged by Plaintiff. At most, non-receipt of the Metformin was an isolated exception to Plaintiff's overall treatment, and there was no "purposeful act" or "failure to respond" to Plaintiff's medical needs. *See Jett*, 439 F.3d at 1096. Mere negligence does not rise to the level of a constitutional violation. *See Wood*, 900 F.2d at 1334.

Additionally, there is insufficient probative evidence that "expired medication renewal" was the "moving force" behind Plaintiff's non-receipt of his Metformin, particularly since he received numerous other medications for other conditions during the same period. *See Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014).

Finally, Plaintiff asserts that Wexford was understaffed and that there was no pharmacy in the complex. (Doc. 86 at 3.) Plaintiff offers no admissible evidence of these allegations. But even if true, these allegations are beyond the scope of the SAC, and there is no proof that understaffing or lack of the pharmacy in the complex caused the discontinuation of the medication.

Plaintiff fails to establish that the interruption in receipt of his medication was caused by a policy or practice of Wexford or that Wexford was otherwise deliberately indifferent to his medical needs. Summary judgment is granted in favor of Wexford.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Summary Judgment on Count III (Doc. 72), Defendants Wexford, Bell, and Lewis's Motion for Summary Judgment (Doc. 80), and Plaintiff's Motion for Leave to Authenticate Plaintiff's Exs. B-E (Doc. 94).

(2) Plaintiff's Motion for Summary Judgment on Count III (Doc. 72) is **denied**; the Clerk of Court is directed to ensure that the docket reflects that Plaintiff's Motion is still pending as to Counts I and II.

(3) Plaintiff's Motion for Leave to Authenticate Plaintiff's Exs. B-E (Doc. 94) is **denied as moot**.

(4) Defendants Wexford, Bell, and Lewis's Motion for Summary Judgment (Doc. 80) is **granted;** the claim in Count III is **dismissed with prejudice and Defendants Wexford, Bell, and Lewis are dismissed**.

…

…

…

(5) The remaining claims are Counts I and II against Linderman and Manning.

Dated this 9th day of June, 2014.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge